IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,
Plaintiff,

v.                                                        Case No. 06–CR–40057–JPG–7

KEVIN PULLEY,
Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Kevin Pulley's pro se motions for compassionate release (ECF Nos. 659, 663). For the reasons below, the Court **DENIES** Pulley's motions.

## I.    PROCEDURAL & FACTUAL HISTORY

### A.  The Conviction

In 2006, a federal grand jury in this District indicted Pulley for conspiring to manufacture and distribute methamphetamine. (Superseding Indictment 1, ECF No. 26). He pleaded guilty the next year, (Plea Agreement 1, 15, ECF No. 276); and the Court sentenced him to a 153-month term of imprisonment, (Judgment 2, ECF No. 345).

In 2019, four years after his release, Pulley tested positive for methamphetamine at least five times, admitted to possessing methamphetamine at least three other times, and failed to submit a written report to the U.S. Probation Office (as required by the terms of his supervised release) 23 times. (Judgment for Revocation of Supervised Release 2, ECF No. 647). The Court sentenced him to another 24-month term of imprisonment, an upward variance from the eight-to-fourteen months recommended by the U.S. Sentencing Guidelines Manual. (*See id.* at 3). He is currently incarcerated at U.S. Penitentiary ("USP") Leavenworth in Kansas. (Def.'s First Mot. for Compassionate Release 1, ECF No. 659).

**B.  The Presentence Investigation Report**

Before both sentencings, the Court considered the Presentence Investigation Report ("PSR") prepared by the Probation Office, which provided information about the nature and circumstances of the offenses and Pulley's background. (*See* PSR 1, ECF No. 342).

According to the PSR, law-enforcement officers in a joint state-federal drug task force first discovered that Pulley was manufacturing methamphetamine in 2004.

> [A] deputy observed a subject wreck his vehicle and run on foot. . . . Another officer searched for the subject and noticed a male in his backyard direct the officers to where he reportedly saw the subject running. The officer detected a strong odor of ether about the male and an even stronger odor emitting from a storage shed on the property. The individual, later identified as Kevin Pulley, left his residence in a vehicle. Other officers were called to the residence and received permission from the defendant's wife . . . to search the residence. Officers located several pieces of aluminum foil with burnt residue and a powdery substance[,] . . . a plastic tube with white residue and folded piece of aluminum foil[,] decongestant tablets[, and] . . . several other items used to manufacture methamphetamine, liquid methamphetamine, and finished methamphetamine.

(*Id.* at 7).

They ultimately discovered that Pulley was manufacturing methamphetamine as a member of a 10-person conspiracy. (*Id.* at 4).

> Pulley's involvement in this conspiracy consisted of stealing anhydrous ammonia for use during methamphetamine cooks. Specifically, Pulley stole anhydrous ammonia on a daily basis for some time. . . . Additionally, Pulley performed methamphetamine cooks and assisted others during cooks.

(*Id.* at 6–7). Together, with the 50 gallons of anhydrous ammonia that Pulley stole, the conspirators manufactured "approximately 12,375 grams or 12.3 kilograms, of a mixture and substance containing methamphetamine." (*Id.* at 8).

— 2 —

### C. Pulley's Motions for Compassionate Release

In May 2020, Pulley moved for a sentence modification under 18 U.S.C. § 3582(c)(1)(A), also called *compassionate release*. (Def.'s First Mot. for Compassionate Release at 1). In a second motion filed in July, he contends that serious medical conditions—high blood pressure, high cholesterol, pre-diabetes, and "early symptoms of COPD"—make him especially vulnerable to the COVID-19 virus. (Def.'s Second Mot. for Compassionate Release  2, ECF No. 663).

The COVID-19 virus, of course, is now a global pandemic. At USP Leavenworth, 14 inmates currently have COVID-19; 516 have recovered; and none have died. *Coronavirus*, Bureau of Prisons (last visited Nov. 6, 2020).[1] In brief, Pulley argues that his increased risk of experiencing serious complications if he contracted COVID-19 is an *extraordinary and compelling reason* warranting his release. (Def.'s Second Mot. for Compassionate Release at 2).

## II.     LAW & ANALYSIS

The Court recognizes that compassionate release is appropriate for some defendants given the COVID-19 pandemic. Even so, each defendant moving for compassionate release bears the burden of showing *not only* that they face an increased risk from the virus, *but also* that their continued incarceration is unnecessary to advance the statutory purposes of punishment (i.e., justice, deterrence, incapacitation, and rehabilitation). Pulley failed to meet that burden.

### A. Legal Standard

District courts generally "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). That said, an exception exists for when "extraordinary and compelling reasons warrant such a reduction . . . ." *Id.* § 3582(c)(1)(A)(i). Even then, however, the sentencing judge must still "consider[] the factors set forth in section 3553(a) to the extent that

---

[1] *Available at* https://www.bop.gov/coronavirus.

they are applicable . . . ." *Id.* § 3582(c)(1)(A). The burden of proof rests on the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The § 3553(a) factors include:

(1)  The nature and circumstances of the offense and the history and characteristic of the defendant;

(2)  The need for the sentence imposed—

  a.  To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  b.  To afford adequate deterrence to criminal conduct;

  c.  To protect the public from further crimes of the defendant; and

  d.  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  The kinds of sentences available;

(4)  The kinds of sentence and the sentencing range established for—

  a.  The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . or;

  b.  In the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . ;

(5)  Any pertinent policy statement—

  a.  Issued by the Sentencing Commission . . . ; and

  b.  That . . . is in effect on the date the defendant is sentenced[;]

(6)  The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)  The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

"The judge need not address every factor 'in checklist fashion, explicitly articulating its conclusions regarding each one.' " *See United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). It is enough to "simply give an adequate statement of reasons, consistent with § 3553(a), for thinking" that a sentence modification is inappropriate. *See Shannon*, 518 F.3d at 496.

### B.  The § 3553(a) Factors Weigh Against Compassionate Release

First, the Court acknowledges the particular danger posed by the COVID-19 pandemic to prisoners, who live in close quarters and often cannot practice social distancing. "But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons ("BOP") is in the best position to know which inmates are most susceptible to infection and whether they still pose a public-safety risk. And since March 2020, BOP has released over 7,000 inmates that it has identified as "suitable for home confinement." *Coronavirus*, BOP (last visited Nov. 6, 2020).[2] Although not bound by any BOP determination, the Court gives BOP some deference in this area "considering [its] statutory role, and its extensive professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

With that in mind, the § 3553(a) factors weigh against a sentence modification here. Although his initial offense was nonviolent, facilitating the spread of dangerous and addictive chemicals to the public is still reprehensible. His role in the offense not only included the manufacture of methamphetamine, but also the theft of precursors from third parties. When he was finally released after nearly a decade in prison, he blatantly ignored the Court's directive to submit

---

[2] *Available at* https://www.bop.gov/coronavirus/.

monthly reports to the Probation Office. Worse, he admitted to continued drug use. Although Pulley feels strongly that his above-Guideline sentence was unwarranted, the Court disagreed—and still does. Rather, the sentence reflects the severity of the offenses and the need to protect the public from further crimes. That remains true now, less than a year later. Even if Pulley faces a heightened risk from COVID-19, just punishment is required for the plague of narcotics that he produced with utter disregard for the community's welfare. Further, home confinement would be an ineffective alternative to imprisonment, as evidenced by Pulley's supervised-release violations. Put differently, Pulley's continued incarceration is necessary to adequately promote respect for the law, reflect the seriousness of the offense, and deter further criminal conduct from himself and others.

**III.    CONCLUSION**

The Court **DENIES** Defendant Kevin Pulley's pro se motions for compassionate release.

**IT IS SO ORDERED.**

**Dated: Friday, November 6, 2020**

**S/J. Phil Gilbert**
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**
